May it please the court, the key issue in this case is how far the PSR's simple substitution rationale can be carried in the audience's eucalyptus. When the prior references themselves do not actually have an assessment like teaching the suggestion for the motivation to combine two references and it's specific to replace some of the elements in the primary reference with some of the elements on the secondary reference. Is the heart of your contention that Cato doesn't show using blue light? It is one of our arguments, but the heart of our contention is really how many substitutions that will have to be done in order to change the Cato reference or the structure describing the Cato reference into something that satisfies the claims of Apotronics. And your argument is that it would be difficult to bring in UV light and combine it with Cato, right? No, we're not arguing that. From a technical standpoint, it would not be difficult because the prior reference actually expressly said one could use either a blue light or a UV light as the excitation light. The real issue here is what happens to the reference structure. The device is the one that generates the RGB three-colored light in the sequence. So at the upstream end, there is the excitation light, which could require either UV or blue light, and Cato itself uses a UV light. And then somewhere downstream is this plate that has different segments that carry what we call a wavelength conversion material that would absorb the excitation light and convert it to a red, blue, or green light or other colored light. And between these two components, there is a so-called diproic element or diproic element that allows the upstream excitation light to pass down to the plate where the wavelength conversion materials are, but it would reflect the converted light, which are longer wavelengths, they're different colors, to prevent them from traveling backwards. And that's what the Cato overall structure is. So Cato uses a UV light because it's more energetic, it's a shorter wavelength than both RGB lights, so the downstream wavelength... So anything that's missing is blue light, right? What is missing is the blue excitation light. But then, in the Cato device, if you change the blue excitation light or the UV excitation light to a blue light, then most of the components downstream from the excitation light source would have to be changed as well. Because these wavelength conversion materials are, they're chemicals, they have a specific absorption spectrum, meaning they would only absorb light of certain wavelength ranges, and then they would have the emission spectrum, which would be RGB colors. So if you change the excitation light from the UV light to something else, to blue light, then you would have to use different phosphors, these wavelength conversion materials. They're different chemicals, they're different compounds. And the element in between, the dichroic neurons, also have specific bandwidth that they would pass, and specific bandwidth that they would reflect. So if you change the UV light to a blue light, then the dichroic neuron will have to instead pass UV light. Now they have to pass blue light. Are the claims of the 114 infringed by the use of a device with UV light? No, it wouldn't, because it would specifically require the excitation light source to be a blue light. If you use, since the claims are open-ended, if you use both a UV light and a blue light, it would still be infringed, but you would have to use at least one blue light as the excitation light source. Because that's actually, it's expressly recited, and was actually one of the claim amendments made in the original amendment. But you have to at least use some blue light. As the excitation light source, correct. So really the heart of our contention is, both the patent examiners and PPAP, when they formulated this simple substitution, the KSR rationale, what they said is, the only change they had to make was to change the UV light into blue light, and one of the multiple segments would have to be made into a clear, or a segment that doesn't carry a wavelength conversion material, because when it's a blue light, then you really don't need to convert it, because the blue component can be satisfied with the light source itself. So really, these two components that would have to be substituted are actually two different parts of the entire system, and they already said that there's one, only one, missing feature, and this argument is carried in the solicitor's brief as well. They characterize that as the only difference between KDO and claim one being this one difference. There are actually two components that have to be substituted, but we're arguing that in addition to these two components, you have to substitute most of the segments in the dichroic mirror, because now they have to pass it. There's a light. And also, the other wavelength conversion material is not just the one that is changed from a blue phosphor to a clear segment. The red and green phosphors would also have to be changed, because now they must absorb a blue light instead of a UV light. They must be changed to different chemicals. So one problem with the PDAS position is that they fail to recognize what the actual substitution has to be, what multiple substitutions have to be. And so when they formulate this simple substitution rationale under KSR, there's only one change that needs to be made. So really, when you correctly look at, from the technical standpoint, what needs to be done to change the primary reference into our claim, there are what we call a wholesale substitution. Almost nothing of relevance in terms of claim components would be left. Everything would have to be changed to something else. Not to accommodate blue light, right? I'm sorry? To accommodate blue light instead of UV light. Correct. So legally, when they formulate the objection, and the PDAS, when they have formed the examiner's objection, you know, the legal argument was the only missing element was the blue light plus the clear segment. But in reality, it wasn't. So actually, the patent examiner, from a technical standpoint, the patent examiner actually recognized that these other multiple substitutions would have to be made. But that's after he said, he applied it for the use of the KSR rationale. He said the simple substitution of one element for another was predictable result. And then he said, okay, well then I recognize that these other substitutions would have to be made from a technical standpoint, correct? But they're all obvious. So really, the legal issue is when you apply, when you use, when the prior art itself actually does not provide an actual suggestion or motivation. When you support an obviousness conclusion based on this articulated by the patent examiner or the PDAS rationale of simple substitution, how far can you go? At what point does it stop being a simple substitution of one element for another? Does anyone want to reserve the rest of your time for rebuttal? Mr. Hickman. Thank you, Your Honor. Good morning. May I please record? Apatronix's device is the same device as Cato's device, except that Apatronix's device can use a blue light source instead of a UV light source. McGuire teaches that a blue light source can be used in place of a UV light source. To show why the board's obviousness analysis was correct, I'd like to briefly cover three points today. First, I'd like to recap the Apatronix's device so we all understand the parts of that device and what those parts are doing in the device. Second, I will review Cato and McGuire and show how they disclosed the exact same parts doing the exact same thing as the parts in the claimed Apatronix's device. And finally, I will explain why, in light of what Cato and McGuire teach, the board's obviousness analysis was correct. Figure 1 of the Apatronix patent, which is at page A118 of the appendix, provides a pretty good summary of the claimed device. And figure 1, page A118, basically what we have is a light source, number 100. That light source can either emit UV light or blue light, and it emits the light toward a rotary wheel, which is number 104 in the figure. That rotary wheel rotates, and the rotary wheel has different regions on it. If we turn to page A119 of the appendix, figure 3B, we see that there are two different regions in this particular rotary wheel. The idea is that the wheel is rotating, and it's converting the incoming UV or blue light into red, green, blue, or white light. To produce a visual image for a screen, we need at least red, green, and blue light. So the first two components are the light source and the rotary wheel. The third component that's an issue here is the dichroic filter. The dichroic filter is somewhere between the rotary wheel and the light source, and what the dichroic filter does is that it ensures that only UV light, or blue light, enters the wheel. And then when the converted light exits the wheel, the dichroic filter ensures that the converted light doesn't bounce back toward the light source. Now let's take a look at what Cato and McGuire did for us. Cato's device is the same device that's closed in Epitronic's patent, except that it uses only UV light instead of blue light. And if you look at page A207 of the appendix, page A207 has figures from Cato's device, and we can see that the figures show that Epitronic's device and Cato's device work quite similarly. It's figure one you're looking at. Figure one, the numbers are a little hard to read, but on the upper left-hand corner is figure one, and at the very bottom of that figure there's kind of a box with a round top on it. That's the light source. That's element number 101. And then the rotary wheel is just above the light source. It's element 102, although it's hard to read from the page. It's the same thing that's happening in the Epitronic's device. The light is emitting UV light that's hitting the rotary wheel, and if we look at figure three, which is in the upper right-hand corner on page A207, we can see two different perspectives of the rotary wheel. The top perspective shows the side of the wheel that faces the light source, and that's where the dichroic film is. So as in the Epitronic's device and Cato, the dichroic film is ensuring that only UV light reaches the wheel and ensures that when that light exits the wheel, it doesn't bounce back towards the light source. The bottom perspective of the wheel on page A207 is the exit side, the exiting side of the wheel, and that's where the incoming UV light comes directly into blue light. So the only thing that Epitronic's device can do that Cato's device can't do is that Epitronic's device can use blue light in addition to UV light. And McGuire tells us that a blue light can be used instead of the UV light. That fact has been understated in this case. McGuire also tells us that the rotary wheel can have what he calls a non-fluorescent region on the wheel to let it pass blue light. McGuire's specification explicitly says this, page A223, column 4, lines 25 and 33. And the idea of using a non-fluorescent region or a transparent region on the wheel is that we have blue light coming in from the light source. We don't want to convert the blue light into something else. We want to simply let that blue light pass through the wheel. So in light of what Cato and McGuire teach, the board's legal conclusion of obviousness was correct. Cato's and McGuire's teachings show us that a person of ordinary skill in the art has the knowledge to construct the precise invention that Epitronic's claims. McGuire shows that it would have been a simple substitution of common elements to use a blue light instead of the UV light source. And that when one uses UV to use a transparent region on the wheel paired with the, I'm sorry, when one uses a blue light source to use a transparent region on the wheel to simply let blue light pass through. So in sum, a person of ordinary skill in the art would have had the background knowledge and creativity to make these simple substitutions. Cato and McGuire provide solid evidence of that. And for that reason, we would ask that the court affirm the board's decision. Okay. Thank you, Mr. Heckman. Ms. Chen. Yes. The question really is, it's not very, these different components can be put together. Technically, there's not much of a challenge of putting these things together. The real question is why. The starting point of a person of ordinary skill in the art is the Cato blue light. And the use of the UV light, and there's really no perceived problem with using the UV light. The Cato system itself is perfectly self-contained. It's fine. It has all of the elements that are necessary to generate the sequence of light. So the fact, the simple fact that one can, one could paint, you know, seven out of eight components of Cato and change it to something else, the lack of technical difficulty in Why would someone do that? Well, what you seem to be suggesting is that the invention of using blue light is not an invention at all because it has no benefit. At the end, both systems, both using blue or UV light would output the same sequence of light. Is there a benefit to using blue light? I'm sorry? Is there a benefit to using blue light instead of UV light? So why isn't that a reason to substitute blue for UV? But that is a McGuire case. McGuire reference does not discuss which one is more beneficial or in terms of practical consideration. And also, you know, with different technological… But we've held the motivation to combine doesn't have to be in the prior art reference, right? That's right. So then the mind of the board board examiner articulated any of these practical reasons for a substitution. What he said was these McGuire teachers either or. So one could take either or. Now that kind of rationale or line of thinking works when it truly is a simple substitution. You would just take, you know, two components of a photon and they both do the same thing. And maybe one designer just happens to pick one versus the other. But in this case, every component needs to work together. So without some overall consideration as to the relative advantage or disadvantage of the light source or the other components, including the wavelength conversion devices. Because they are chemicals. They do have properties that are not entirely predictable. And a lot of times, well, with the advance of technology, different chemicals may become available that work better or worse versus UV or blue light. So all of these are considerations that are not explained. So just to take a simple conceptual point that the McGuire prior said it could be UV or blue. And just say then, in the Cato case, you would have changed the UV light to blue light. And along with that, almost all of the components downstream without actually explaining or finding a fact as to why someone would do that. I think that basically that decision lacks substantial support and substantial evidence for that either. Okay. Thank you, Ms. Chen. Thank you. Thank both counsel. The case is submitted.